Michael Boyle,
66932 Sagebrush Lane
Bend, Oregon 97703
Telephone: (541) 640-9081
Email: mboyle2016@gmail.com

FILED 09 SEP '22 14:32 USDC-ORE

      Plaintiff Pro Se

# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF OREGON

### Eugene Division

| | |
|---|---|
| MICHAEL BOYLE,       ) <br>            ) <br>       Plaintiff,      ) <br>            ) <br>     v.             ) <br>            ) <br> SHANE L. NELSON, in his Individual ) <br> Capacity and in His Official Capacity as ) <br> Sheriff for the County of Deschutes; and ) <br> MICHAEL HUDSON, an Individual, and ) <br> JASON JAMES, an Individual, and ) <br> CHAD DAVIS, an Individual, and ) <br> DESCHUTES COUNTY, a political ) <br> subdivision of the State of Oregon, ) <br>            ) <br>       Defendants.     ) <br>            ) | Case No. 6:22-cv-01361-AA <br><br> COMPLAINT <br><br> Civil Rights Action (42 U.S.C. §1983) <br> Intentional Infliction of Emotional <br> Distress, and Intentional Interference in <br> Economic Relations  (State Torts) <br><br> JURY TRIAL DEMANDED |

## COMPLAINT

COMES NOW, Plaintiff Michael Boyle ("Plaintiff"), appearing pro se herein, and hereby

brings this civil action for actual and punitive damages against Defendant Shane L. Nelson

("Defendant Nelson"), in both his individual and official capacities, and against Defendants

Michael Hudson ("Defendant Hudson"), Jason James ("Defendant James"), and Chad Davis

("Defendant Davis"), all in their official capacities, and against Defendant Deschutes County

("Defendant Deschutes County"), in its official capacity and as the employer of Defendants

Nelson, Hudson, James, and Davis,  alleging that said Defendants knowingly and deliberately

fabricated or facilitated the fabrication of, false physical evidence, which falsely implicated

Plaintiff in a criminal investigation, and that they further offered false sworn testimony under

penalty of perjury, and that they further concealed, destroyed, or otherwise made unavailable

evidence which exonerates Plaintiff.

Thus, Plaintiff brings this lawsuit against Defendants Nelson, Hudson, James, and Davis,

and against Deschutes County, under 42 U.S.C. §§ 1983 and 1988 for violations of his due

process rights under the Fifth and Fourteenth Amendments to the United States Constitution.

These claims are based on Defendants' fabrication of physical and other evidence in obtaining

and in during the later execution of a search warrant, with the intent of falsely implicating

Plaintiff in a criminal investigation and subsequent prosecution, false sworn testimony with the

intent of causing Plaintiff to face false criminal charges, and the destruction, concealment or

obscurement of digital evidence, with the intent of depriving Plaintiff of evidence which

exonerates him of the criminal charges, and for conspiracy to commit and conceal those actions,

which conspiracy is still ongoing today.

## PARTIES

1.      Plaintiff Michael Boyle is an an individual person, a resident of the State of

Oregon, County of Deschutes.

2.      Defendant Shane L. Nelson  is, and, at all times relevant to this complaint, was

the elected Sheriff for the County of Deschutes, in the State of Oregon, In this position,

Defendant Nelson was and is the final policy maker and administrative authority for the Deschutes County Sheriff's Office, and is therefore considered to have committed the actions and offenses herein described, whether personally or through his agents. He is sued herein in his individual and personal capacities.

3.    Defendant Michael Hudson is and all relevant times herein was, a sworn deputy with the Deschutes County Sheriff's office.

4.    Defendant Jason James is and all relevant times herein was, a sworn deputy with the Deschutes County Sheriff's office; his rank is Detective Sergeant.

5.    Defendant Chad Davis is and all relevant times herein was, a sworn deputy with the Deschutes County Sheriff's office; his rank is Lieutenant.

6.    Defendant Deschutes County is and, at all times relevant to this complaint, was a political subdivision of the State of Oregon, and the employer of Defendants Nelson, Hudson, James, and Davis. In this position, Defendant Deschutes County was and is responsible for the conduct of said Defendants, under the doctrine of *respondeat superior*.

### JURISDICTION AND VENUE

7.    The Court has subject-matter jurisdiction because this matter arises under the Constitution and laws of the United States. See U.S. Const. amend. XIV; 28 U.S.C. § 1331; 42 U.S.C. § 1983. The Court has supplemental jurisdiction over Plaintiff's related state-law claims. See 28 U.S.C. § 1367.

8.    Venue in the District of Oregon is appropriate because all parties herein reside in the District of Oregon, 28 U.S.C. § 1391(b)(1) and (c)(1); Defendants are each subject to the personal jurisdiction in the District of Oregon with respect to the claims raised in this complaint,

28 U.S.C. § 1391(b)(1) and (c)(2); and Defendants and each of them violated Plaintiff's due process rights in the District of Oregon, 28 U.S.C. § 1391(b)(2).

## FACTS RELEVANT TO ALL CLAIMS

9.     At all times relevant herein, Plaintiff was the owner and operator of a commercial venue: "Hop in the Spa", which advertised itself as "America's First Beer Spa", and which had been in business in Sisters, Oregon since 2016.

10.     Plaintiff's business featured new and proprietary Craft Brew Inspired offerings, which incorporated brewing hops, grains and other ingredients in cedar soak tubs.  Its public policy, which was clearly posted, listed all of the available amenities to which customers were entitled, as part of their spa package. In addition, complementary servings of beer and wine (for which no OLCC license was required, since no compensation was received) and Bavarian pretzels were offered.   All alcoholic products were offered to the patrons of legal age, at no charge, upon request. The *gratis* nature of the offering, was a requirement of the Oregon Liquor Control Commission, in order to operate without a liquor license. Neither tips, or any other form of compensation could be received for the alcoholic beverages.  Hop in the Spa had received state approval to operate without any beverage or food service license.

11.     Also, the "Aurora Treatment", which included a variation of massage, was not a service for which Plaintiff required a license from the Oregon Board of Massage Therapy (OBMT), for the selfsame reason, that there was no compensation received for the Aurora Treatment; it was simply offered, *gratis* ;i.e. - no compensation was charged for the treatment - as a sort of *amuse-bouche* to the general public upon request.  In spirit, both the OLCC and OBMT convey the some intent.  That intent is - respectively - to not permit the offering or

service of alcohol, or the practice of massage, to generate any revenue, absent a state-issued
permit or license to do so.

     12.    Prior to beginning to offer the Aurora Treatment, Plaintiff had, in fact, made three
separate phone calls to OBMT compliance specialists. Those phone calls, which are documented
in phone logs, confirmed the Board's policy of no license requirements, if no compensation is
received, as stated in the OBMT statutory authority set forth in ORS 687.011 (7)(b).
Additionally, the plaintiff continued to communicate with the OBMT staff, to ensure that he was
and remained in compliance.

     13.    On or about June 29th, 2021, Defendant Nelson, by and through  and or his
employee Defendant Hudson, obtained a warrant to search the Plaintiff's business premises,
presumably for evidence that Plaintiff had engaged in massage therapy, without a license. This
was accomplished by the commission of perjury, and by dint of subterfuge and omission.

     14.    Upon information and belief, Defendant Hudson falsely alleged to the issuing
judge that there was reasonable cause to believe that Plaintiff had committed the criminal offense
of engaging in massage without a license, while simultaneously omitting, or by deliberately
neglecting to offer the for the issuing judge's information, the necessary fact to the consideration
of the warrant, that a demonstration of financial compensation was statutorily required in order
for such a charge to be levied, and that there was no such demonstration as regarded Plaintiff.

     15.    This statutory requirement was a fact of which Defendant Nelson and Defendant
Hudson were, or in the alternative should have been, aware of, and which, upon information and
belief, Plaintiff alleges that Defendant Hudson either deliberately concealed from the judge, or
actually offered false information, as to this statutory requirement.

16.     Defendant Houston represented to the issuing judge that he was qualified as an expert in identifying sexual predators, and that - as such - he further related false or deliberately disingenuous information to the issuing judge, which he alleged were indicators of such behavior on Plaintiff's part, including but not limited to:

      a.     That the Plaintiff "preyed" on women between 22-42 years of age (ignoring the fact that this represents the average female demographic for spa treatments);

      b.     That the Plaintiff "preyed" on women with brasserie cup sizes between aa-dd (ignoring the fact that this statistic encompasses the overwhelming majority of women in general); and

      c.     That the Plaintiff had positioned the spa tubs, and placed customers in the spa tubs, in such a manner as to make female customers observable (notwithstanding the fact that the Plaintiff played no part in the original installation or placement of the spa tubs).

17.     Particularly egregious in the Defendants' representations, mis-representations, and omissions offered to the issuing judge in support of the search warrant, was the fact that the said Defendants were already aware that there was actually no basis for their application. In late September of 2020, the Deschutes County Sheriff's office had received unsolicited information from an out-of-state resident, alleging that a series of photographs she had taken some months before during a spa session - photographs which were taken in direct contravention of the clearly posted policy of the business - purported to show a "false mirror", made of one-way glass, when taken and/or viewed with a "polarizing filter" and "low-light" settings. It was further alleged that

her "analysis" of the photographs, led her to believe that Defendant had been present behind the supposed one-way mirror, watching and possibly recording herself and her husband - in essence, accusing Plaintiff of being a sexual predator.

18.    That the Defendants did not assign a high degree of credibility to these unfounded and unsolicited allegations, is best shown by the fact that they took no action on the claims, until over four months had passed, even though the Plaintiff's business was unaffected by the Covid-19 emergency, and remained open to patrons.

19.    Finally, in February of 2021, two Deschutes County Deputies conducted an undercover investigation of Plaintiff's business premises, while posing as customers.

20.    During a period of approximately three hours, the deputies examined all surfaces in the spa room, including particularly the mirror in question.  They determined that the so-called "one-way"mirror was actually a solid, normal mirror, affixed to the wall, and that in fact, the wall on the other side was untouched. At the conclusion of their investigation, they determined that the "**reports of** the [Plaintiff's] **criminal behavior** were **unfounded**." (emphasis added)

21.    Notwithstanding this knowledge however, the said Defendants omitted this information from the issuing judge, and alleged that - in addition to the "unlicensed massage therapy" which they were allegedly investigating - they suspected that Plaintiff had been involved in secretly observing patrons in the spa area, even though their previous investigation had conclusively shown that such observation was simply not possible.

22.    On or about June 30, 2021, at the approximate hour of 9:30 p.m., Plaintiff's business premises were entered by Defendants Hudson and Davis, who along with several other uniformed and deputized employees of the Deschutes County Sheriff's office (officers who had

not been involved in drafting the search warrant and who were apparently unaware of the false statements, mis-statements, and omissions contained therein) executed the search warrant at Plaintiff's business location, acting under the authority of Defendant Nelson, pursuant to the search warrant which authorized and specifically directed the said officers to search for and seize any and **all** electronic devices capable of recording or storing digital information.

23.    Plaintiff was not permitted to observe or witness the search activities, and was kept outside of his place of business for approximately 90 minutes, while the officers performed the search.

24.    At the conclusion of the search, Plaintiff was informed that the officers had allegedly found a "peephole", and Plaintiff was subsequently placed under arrest for practicing massage without a license and misdemeanor sexual conduct. and transported to the Deschutes County jail.

25.    After being booked, fingerprinted, and released on bail, Plaintiff returned to his business premises, which he had not been permitted to inspect or observe, prior to his arrest. Upon entry, he proceeded to the area of the alleged "peephole". Upon close observation, it was obvious that the "peephole" had been recently manufactured, and was not - in fact - preexisting, as there were still pieces of drywall and fresh drywall dust, directly below it.  Plaintiff photographically documented the scene, and preserved the evidence of the manufactured nature of the "peephole".  Photographic evidence is attached hereto as Plaintiff's Exhibits "A" and "B" (respectively, before and after, time and date-stamped photos), and by reference incorporated fully herein as though set out hereunder.

26.    Upon inspection, Plaintiff discovered further acts of vandalism by the Deschutes

County officers, including but not limited to: electrical plates removed from the wall, missing computers, and other damages, and most outrageously - the mirror which had been the subject of the earlier investingation, had been torn from the wall and smashed. This, even though the Defendants were clearly aware of the all non-invasive nature of the mirror. This was not legitimate investigation; this was pure vandalism. All of these damages were contemporaneously photographically documented by Plaintiff. Further, examination of the cloud-based security footage of the beginning of the search - before the cameras were disabled - clearly shows uniformed deputies opening a file cabinet, and then picking through and photographing the documents therein; activities which were clearly outside of the scope and authority of the search warrant. In all of these actions, the defendants and their employees were clearly acting outside of the scope of the search warrant, and their subsequent actions were illegal and unwarranted.

27.    The following day, Plaintiff attempted to contact Defendant Nelson, to inform him of the damage which his employees had done, and to request a formal investigation. Defendant Nelson was unavailable at that time, but the next day, Plaintiff received a call from a person identifying himself as one of said Defendant's subordinate supervisory employees, who offered to come to Plaintiff's business the following day, in order to investigate the Plaintiff's findings and allegations.

28.    When the subordinate supervisory employee arrived, supposedly to "investigate" the Plaintiff's findings and allegations, Plaintiff suddenly realized for the first time that this employee was Defendant Davis, the same Deputy who had actually supervised the execution of the search warrant. Rightfully concerned at the obvious conflict of interest which this represented, Plaintiff immediately requested that Defendant Davis terminate the visit, which

request was complied with.

29.    The following day, and over the course of the next four weeks, Plaintiff made

numerous and repeated attempts to contact Defendant Nelson, in order to bring the matter to his

attention, and to request a proper investigation of the findings and allegations, however he never

received a direct response.

30.    Eventually, Plaintiff was contacted by Defendant James, who identified himself as

the public information officer for the sheriff's department, and informed Plaintiff that he had been

assigned to conduct an investigation of Plaintiff's claims and allegations.  Upon information and

belief, under Deschutes County Sheriff's department policy, the public information officer is not

authorized to conduct investigations, however this information was concealed from Plaintiff.

Defendant James requested that he be permitted to examine the Plaintiff's business premises and

the evidence that Plaintiff had collected, in furtherance of a supposed investigation.

31.    Despite obvious misgivings, Plaintiff - in the spirit of cooperation - agreed to the

examination, which took place on or about August 2, 2021.

32.    Following the examination, Plaintiff waited patiently for information regarding

the outcome of the investigation.  Finally, after a few weeks had passed, Plaintiff took it upon

himself to contact Defendant James, regarding the status or outcome of the supposed

investigation.

33.    When Plaintiff asked about the current status of the investigation, he was

informed that the investigation had - in fact - been concluded, and that Defendant James had

supposedly found an image on the internet from roughly two years prior, that purported to show

the so-called "peephole" in the wall.

34.     Despite Plaintiff's understandable skepticism, he requested a report number and a copy of the report and image. He was informed that the requested information was "confidential" (notwithstanding the "fact" that it had supposedly been found on the internet), and he was provided an alleged official report number.

35.     Plaintiff was informed by Defendant James that he would "have to go through normal channels" to obtain the report.

36.     The following morning, Plaintiff went to the Sheriff's office to ask for a copy of the report; after giving the desk clerk the report number he had been given by Defendant James, he was informed that no such report existed.

37.     Since Plaintiff had been previously told by Defendant James, that the report was considered "confidential", he asked the clerk if there was a possibility that the said report could be retained in the sheriff's legal department.

38.     After inquiry, Plaintiff was informed that the legal department did not possess investigative reports of any kind.

39.     While examining the official police report of the execution of the search warrant, Plaintiff noted that the so-called "peephole" was mentioned often throughout the entire report. However, also contained within the body of that report there were notations that, among the items seized, was a surveillance camera, identified as "Kami", although that item was not found on the later inventory sheet the sheriff's department provided. Additionally, two laptop computers which clearly fell within the parameters of the search warrant, and which had been missing from the premises after they were restored to Plaintiff, were also not included in the inventory sheet.

40.    After a thorough inspection of the business premises, it was obvious that the "Kami" camera, and the two laptops had, in fact, been seized. Upon inspecting all discovery materials turned over regarding Plaintiff's criminal charges, it was apparent that the camera and the laptops had simply disappeared. This is especially relevant as regards the camera, because the memory capability of the Micro-SD memory card in the camera's internal storage system exceeded three gigabytes (i.e., 3,000 hours of mp4 video); additionally that particular camera was also equipped with two additional 1-gigabyte Micro-SD storage cards, meaning that the entire storage capacity contained in that particular camera, was almost 2 years of surveillance video. Further,  it was an item which had been specifically referenced in the search warrant, requiring the officers to seize all electronic storage devices. That it had been taken, was clearly indicated by the fact that the bateries and caddy of the additional SD cards - although not the cards themselves - had been left behind on the floor Upon information and belief, Plaintiff alleges that the video content of that camera is and was exculpatory evidence that could or would exonerate Plaintiff of all criminal charges, and that the evidence logically and reasonably suggests that it was hidden, destroyed, or otherwise made unavailable by Defendants and the subordinate employee officers.  Upon inquiry, Defendant Davis claimed that the Kami camera had not, in fact, been seized, and claimed that the rationale was because the camera supposedly had no memory storage capability.  As set forth above, and as further demonstrated by the copy of the specifications sheet for the camera, attached hereto as Plaintiff's Exhibit "C", and by reference incorporated fully herein as though set out hereunder, that allegation was demonstrably false.

41.    As of this time, the supposed report of the investigation has still not been discovered, if it indeed ever even existed anywhere in the Deschutes County Sheriff's office

records. Body cam footage from at least two of the subordinate employee officers, confirm that the "peephole" was, in fact, actually manufactured by subordinate employee officers of the Dechutes County Sheriff's Office. Further evidence of such manufacture is expected to be made available through discovery herein, and the record herein will be supplemented with such evidence when available.

42.    Prior to the actions complained of herein, Plaintiff's business model was proving financially successful and viable for expansion and investment. Plaintiff had received inquires for potential franchising opportunities, and two unsolicited offers to present his business model on the "Shark Tank" television program. Additionally, Plaintiff had a well-earned and positive public image as a businessman and entrepreneur, not only locally and regionally, but nationally as well, having been - among other recognitions - a past President of the National Windshield Repair Association.

43.    As a direct, proximate, and foreseeable result of the improper and tortious actions of Defendants, as well as the negative publicity generated by the Defendants' actions - much of which was initiated by the Defendants themselves - Plaintiff was forced to close his successful business, to terminate any plans for expansion or growth of that business model, and also suffered damages to his personal and professional reputations.

44.    In addition to the other losses and claims set forth herein, Plaintiff also suffered actual out-of-pocket losses, as a result of additional damages which had been suffered at the hands of the officers executing the search warrant, and which they - being aware of - had attempted to conceal.

45.  Several days after the search warrant had been executed, and after Plaintiff had cleaned and restored the business premises to an acceptable level. Plaintiff was preparing for a previously-booked party, when he discovered that approximately 200-300 gallons of water had leaked from one of the spa tubs onto the floor, and into the area below.  Upon inspection, it was discovered that the reason for the leakage, was that the searching officers - with no legitimate reason to do so - had pulled the spa tubs away from their mountings, resulting in cracked and broken piping fixtures in the area underneath.  Upon information and belief, the deputies, realizing their error, had simply shoved the tubs back into place, in an apparent efort to conceal the damage.

46.     As a direct, proximate, and foreseeable result of these improper and illegal actions, Plaintiff has suffered actual damages in the approximate sum of $15,000, or such other reasonable sums as may be shown at trial.

47.     The possible total financial loss to Plaintiff is difficult to calculate with certainly, but Plaintiff expects to demonstrate at trial, through expert testimony and other evidence,  a potential loss in the area of $30–$40 Million dollars.  Plaintiff therefore explicitly reserves the right to amend these pleading to add such additional claims and prayers for relief as may be demonstrated to be appropriate.

## COUNT I

### Intentional Use of Perjured Testimony
### Fourteenth Amendment Due Process Violations
### Deprivation of Rights Under Color of Law

48.     The allegations in paragraphs 1 through 47 inclusive hereinabove, are realleged and incorporated by reference herein as if fully set forth.

-14-

49.    Defendant Nelson, in his official and individual capacity, either personally or through others, including but not limited to Defendant Hudson, in pursuit of a search warrant, presented testimony known to him to be false, perjurious, incomplete, and lacking in probable cause, to a Circuit Court Judge of the State of Oregon, sitting in Deschutes County, thereby violating Plaintiff's right to due process as guaranteed to him by the Fourteenth Amendment to the United States Constitution.

50.    At all times relevant to this Count, Defendant Nelson acted under color of state law in his official capacity as the final policy-maker for the Deschutes County Sheriff's Office.

51.    The knowing presentation of false testimony by Defendant Nelson, and or his subordinate officers - including but not limited to Defendant Hudson - acting under his direction and acting in his official capacity, was the primary moving force causing the Court to issue the search warrant against Plaintiff's business premises.

52.    Defendant Nelson and/or Defendant Hudson drafted and swore out a warrant affidavit for Plaintiff's business, knowing that the warrant would be executed by other armed Deschutes County officers, and knowing at the time that the affidavit contained false and misleading statements, omitted material information, relied on false information, and was not supported by probable cause.

53.    The manufacturing of evidence, together with the wilful and knowing use of that evidence, and the falsification to the court of the statutory and evidentiary bases to justify the search warrant, along with perjured testimony to wrongfully obtain a search warrant, deprives a defendant of his clear right to due process as guaranteed by the Fourteenth Amendment's Due Process Clause.

54.    Because Plaintiff sues Defendant Nelson in his official capacity for the knowing presentation of false evidence and the knowing proffer of false testimony, qualified immunity does not shield said Defendant from liability in his official capacity as Sheriff of Deschutes County, Oregon.

55.    As a result of Defendant's violation of Plaintiff's Constitutional rights, as well as the rights guaranteed him under Title 18, United States Code, Section 242 and 2(b) , Plaintiff is entitled to damages against Defendants and each of them, and against Defendant Nelson in both his official and individual capacities, in a reasonable amount to be determined at trial, but in no case less than the sum of Two Million dollars ($2,000,000).

## COUNT II

### Fabrication of False Evidence During Investigation
### Fourteenth Amendment Due Process Violations

56.    Plaintiff's Second Claim for Relief is alleged in addition to and not as an alternative to and without waiving the allegations of his First Claim for Relief. The allegations in paragraphs 1 through 39 inclusive hereinabove, are realleged and incorporated by reference herein as if fully set forth.

49.    Defendants Nelson, Hudson, James, and Davies, each in his respective official and in Defendant Nelson's individual capacity, fabricated or caused to be fabricated, evidence which each knew was false in the investigation of Plaintiff, thereby violating Plaintiff's right to due process of law, as guaranteed by the Fourteenth Amendment.

50.    At all times relevant to this Count, said Defendants acted under color of state law; Defendant Nelson in his official capacity as the final policy-maker for the Sheriff's Office of

-16-

Deschutes County, Oregon, and the supervisor of Defendants Hudson, James, and Davis.

51.    Said Defendants' conduct in manufacturing, and or causing to be manufactured, false physical and other evidence against Plaintiff, and in concealing evidence which tended to exonerate Plaintiff, violated Plaintiff's due process rights.

52.    Because Defendant Nelson, acting in his official capacity as the Sheriff of Deschutes County, and therefore the final policy-maker for the Sheriff's Office, and Defendants Hudson, James, and Davis acting in their official capacities as sworn officers of the Deschuts Couhty Sheriff's office, each intentionally and deliberately caused the fabrication of physical evidence in the process of investigating Plaintiff, each is liable in his official capacity.

53.    Defendant Nelson is also liable in his individual capacity for his intentional acts in causing the fabrication of physical evidence, implicating Plaintiff in a criminal activity, in which he was not actually involved.

54.    Because Plaintiff sues Defendant Nelson in his official capacity, qualified immunity does not shield Defendant Nelson from liability as the Sheriff of Deschutes County, Oregon.

55.    Because Plaintiff sues Defendant Nelson in his individual capacity for the falsification of evidence during an investigation, qualified immunity does not shield Defendant Nelson from liability.

56.    Plaintiff's due process right not to be the subject of falsification of evidence in an investigation was clearly established at the time Defendant Nelson violated that right. Thus, qualified immunity does not shield Defendant Nelson from liability.

57.    Defendants Nelson Hudson, James, and Davis each knew that fabricating physical

evidence violated Plaintiff's due process rights.

58.     Said Defendants' violation of Plaintiff's due process rights by falsification of evidence caused Plaintiff to suffer significant damages, including but not limited to his wrongful arrest, imprisonment, and trial.

59.     As a result of said Defendants' violation of his constitutional rights, Plaintiff is entitled to damages in a reasonable amount to be determined at trial, but in no case less than Two Million dollars ($2,000,000), in addition to his fees and costs.

60.     Said Defendants' fabrication of evidence against Plaintiff was intentional and deliberate. In fabricating evidence against Plaintiff, said Defendants and each of them acted with malice and with the intent to violate Plaintiff's Federal constitutional rights to due process of law. Therefore, punitive damages should be allowed and awarded against said Defendants and each of them, and against Defendant Nelson in both his official capacity and in his individual capacity.

61.     Such damages are may be assessed against any of the said Defendants in their respective official capacites, should also be assessed against Defendant Deschutes County, under the doctrine of *respondeat superior*.

### COUNT III

### Intentional Use of Perjured Testimony
### Fourteenth Amendment Due Process Violations

62.     Plaintiff's Third Claim for Relief is alleged herein in addition to and not in the alternative to and without waiving the allegations of his First or Second Claims for Relief. The allegations in paragraphs 1 through 47 inclusive hereinabove, are realleged and incorporated by

reference herein as if fully set forth.

63.    Defendant Nelson, in his official and individual capacity, either personally or through others, including but not limited to Defendant Hudson, presented evidence known to him to be false, incomplete, and misleading to the Grand Jury of Deschutes County, thereby violating Plaintiff's right to due process as guaranteed by the Fourteenth Amendment. This false, incomplete, and misleading information included, but was not limited to, the information as set forth in Paragraph 16 above.

64.    At all times relevant to this Count, Defendant Nelson acted under color of state law in his official capacity as the administrator and final policy-maker for the Deschutes County Sheriff's Office.

65.    The knowing presentation of false testimony by Defendant Nelson, and or his subordinate officers, all acting under his direction, and each acting in his respective official capacity, comprised a primary moving force, ultimately causing Plaintiff to be indicted by the Grand Jury.

66.    The manufacturing of evidence, and the deliberate and knowing use of that evidence, along with perjured testimony to obtain a wrongful indictment, deprives a defendant of his long-recognized right to due process as guaranteed by the Fourteenth Amendment's Due Process Clause.

67.    Because Plaintiff sues Defendant Nelson in his official capacity for the knowing presentation of false evidence and the knowing proffer of false testimony, qualified immunity does not shield said Defendant from liability in his official capacity as Sheriff of Deschutes County, Oregon.

68.    As a result of Defendant Nelson's violation of Plaintiff's constitutional rights, he is entitled to damages against both Defendants, and against Defendant Nelson, in both his official and individual capacities, in a reasonable amount to be determined at trial, but in no case for less than the sum of Two Million dollars ($2,000,000).

## COUNT IV

### Conspiracy to Violate Plaintiff's Constitutional Rights
### Fourteenth Amendment Due Process Violations
### (42. U.S.C. § 1983 )

69.    Plaintiff's Fourth Claim for Relief is alleged herein in addition to and not in the alternative to and without waiving the allegations of his First, Second, or Third Claims for Relief. The allegations in paragraphs 1 through 47 inclusive hereinabove, are realleged and incorporated by reference herein as if fully set forth.

70.    As set forth above, on or about June 30, 2021, and continuing thereafter unto the present day, Defendant Nelson entered into an active and ungoing  conspiracy with Defendants Davis, James, and Hudson and others, all with the intention of fabricating evidence against Plaintiff, in order to make it appear that Plaintiff had been guilty of crimes which he had not actually committed.

71.    The continuing object of the conspiracy was and is to conceal the facts that: (1) the original search warrant was obtained under false pretenses, and by means of a perjured affidavit and/or testimony and other false, misleading information and/or the omission thereof and unsupported by probable cause; and (2) the fabrication of evidence during the execution of the wrongfully-obtained search warrant; and (3) the concealment, destruction, or otherwise making unavailable, evidence which tended to exonerate Plaintiff from the criminal charges; and

(4) the evidence and testimony presented to the grand jury in support of the criminal indictments of Plaintiff were false, perjurious, incomplete, and lacking in probable cause, while at the same time omitting from their consideration the knowledge of the existence of the additional evidence which tended to exonerate Plaintiff.

72.     Further Defendant Deschutes County failed to prevent the conspiracy between Defendants Nelson, Hudson, James, and Davis and other individuals, to deprive Plaintiff of his Federally-protected rights, from on or about June 30, 2021 to the present day, all in violation of 42 U.S.C. 1985 and 1986.

73.     As a result of the conspiratorial actions by Defendants, all in violation of Plaintiff's constitutional rights, he is entitled to damages against all Defendants, and against Defendant Nelson, in both his official and individual capacities, in a reasonable amount to be determined at trial, but in no case for less than the sum of Two Million dollars ($1,000,000).

### COUNT V

### State Law Claim
### Intentional Infliction of Emotional Distress

74.     Plaintiff's Fifth Claim for Relief is alleged herein in addition to and not in the alternative to and without waiving the allegations of his First, Second, Third, or Fourth Claims for Relief. The allegations in paragraphs 1 through 47 inclusive hereinabove, are realleged and incorporated by reference herein as if fully set forth.

75.     The actions of Defendants Nelson, Hudson, James, and Davis, as set forth above caused, and were intended to cause, extreme emotional distress and suffering to Plaintiff, to damage his standing and reputation with his family and friends, to harm his repute in the

community at large, to require him to answer to false criminal charges, and in general, to disrupt Plaintiff's normal life to the greatest extent possible.

76.     As a direct, proximate and foreseeable result of the actions of said Defendants as described above, Plaintiff should be entitled to a money award in his favor and against said Defendants in their official capacity in the sum of $126,200, or such other reasonable sums as may be proven at trial, for intentional infliction of emotional distress. Plaintiff should further be entitled to a money award in his favor and against Defendant Nelson in his personal capacity, in the sum of $1,000,000, or such other reasonable sums as may be proven at trial, for intentional infliction of emotional distress.

## COUNT VI

### State Law Claim
### Intentional Interference in Economic Relations

77.     Plaintiff's Sixth Claim for Relief is alleged herein against Defendants in their official capacities as an alternative to and not in addition to his Fifth Claim for Relief, and against Defendant Nelson in addition to and not in the alternative to, and without waiving the allegations of his First, Second, Third, Fourth, or Fifth Claims for Relief. The allegations in paragraphs 1 through 47 inclusive hereinabove, are realleged and incorporated by reference herein as if fully set forth.

78.     The Plaintiff had a previously-existing professional or business relationship with the public at large, which included a prospective economic advantage.

79.     The Defendants, by and through the actions herein described, committed intentional interference with those prospective relationships, with the inevitable and foreseeable

result that Plaintiff was forced to close his business enterprise.

80.    Defendants were not third parties to the Plaintiff's prospective relationships with the parties with whose economic relationships Defendants improperly interfered, and had no reasonable basis for such interference.

81.    The actions ascribed to Defendants Nelson, Hudson, James, and Davis were accomplished through improper means or for an improper purpose.

82.    Plaintiff alleges and will prove at trial, a causal effect between the tortious interference and damage to his prospective economic relationships, including but not limited to, liquidated damages in the reasonable sum of $110,000 or such other sums as may be shown at trial, to adequately compensate Plaintiff for the sums owed by him personally for the duration of the premises lease.

83.    Additionally, as a proximate and foreseeable result of the actions of said Defendants and each of them, and the negligence of Defendant Deschutes County as described above, Plaintiff is entitled to a money award against Defendants in their official capacities, in the sum of $126,200, or such other reasonable sums as may be proven at trial, for general damages for Intentional Interference in Economic Relations. Plaintiff should further be entitled to a money award in his favor and against Defendant Nelson in his personal capacity, in the sum of $1,000,000, or such other reasonable sums as may be proven at trial, for Intentional Interference in Economic Relations.

## COUNT VII

### State Law Claim
### Vandalism

-23-

84.    Plaintiff's Sixth Claim for Relief is alleged herein against Defendants in their official capacities in addition to and not in the alternative to, and without waiving the allegations of his First, Second, Third, Fourth, Fifth, or Sixth Claims for Relief. The allegations in paragraphs 1 through 47 inclusive hereinabove, and particularly Paragraphs 44 through 46 inclusive, are realleged and incorporated by reference herein as if fully set forth.

85.    As set forth, Defendant Deschutes County's employees committed acts of vandalism - unrelated to the execution of the search warrant- which caused Plaintiff to suffer a direct out-of-pocket loss in the approximate sum of $15,000.

86.    Plaintiff is therefore entitled to recover from Defendants and each of them, his actual damages for their acts of vandalism, in the reasonable sum of $15,000, or such other reasonable sums as may be shown at trial.

### Reasonable Attorney's Fees and Costs

87.    42 U.S.C. § 1988(b) allows "the prevailing party. a reasonable attorney's fee as part of the costs." in an action brought under 42 U.S.C. § 1983.

88.    Plaintiff requests that the Court grant an award for reasonable attorney's fee in this action.

### Demand for Jury Trial

89.    For all claims alleged in this Complaint, Plaintiff demands a jury trial.

### Compliance With Tort Claims Notice Act

90.    Plaintiff avers that he has fully complied with the requirements of ORS 30.275, as regards the state law claims.

## PRAYER FOR RELIEF

Wherefore, Plaintiff Michael Boyle, appearing pro se herein, requests that this Court enter

an Order granting the following relief:

1.    Awarding Plaintiff judgment on his Federal Law and Civil Rights claims in an amount to be determined at trial, but in no case less than Eight Million dollars ($8,000,000); and

2.    Awarding Plaintiff judgment on his State Law claims against Defendants in their official capacities in the sums of $125,000 in liquidated damages and $126,200 in general damages, or such other sum as may be determined at trial; and

3.    Awarding Plaintiff judgment on his State Law claims against Defendant Nelson in his personal capacity in the sum of Two Million dollars ($2,000,000), or such other sum as may be determined at trial; and

4.    Awarding punitive damages in favor of Plaintiff and against Defendants and each of them and Defendant Nelson in his individual capacity, in an amount to be determined at trial; and

5.    Awarding Plaintiff his fees and costs, including reasonable attorneys' fees as provided by 42 U.S.C. § 1988; and

6.    Granting such other and further relief as the Court deems just and equitable

Dated:        August _____, 2022        _____
                                                         Michael Boyle, Plaintiff Pro Se
                                                         66932 Sagebrush Lane
                                                         Bend, Oregon 97703
                                                         Telephone: (541) 640-9081
                                                         Email: mboyle2016@gmail.com